# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WAYNE HASKELL,

                Plaintiff,

v.

KARL STRELNICK and PATRICK MURPHY,

                Defendants.

Case No. 17-CV-1491-JPS

**ORDER**

### 1. INTRODUCTION

On December 6, 2017, the Court screened Plaintiff's complaint and allowed him to proceed on a claim under the Eighth Amendment for Defendants' deliberate indifference to his serious medical needs. (Docket #13). On February 5, 2018, Defendants moved for summary judgment on the basis of Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Docket #22). Plaintiff responded to the motion on February 27, 2018, (Docket #28), and Defendants replied on March 12, 2018, (Docket #30). For the reasons explained below, Defendants' motion must be granted.

### 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3. **BACKGROUND**

   3.1 **Plaintiff's Failure to Dispute the Material Facts**

The relevant facts are undisputed because Plaintiff failed to dispute them. In the Court's scheduling order, entered January 4, 2018, Plaintiff was warned about the requirements for opposing a motion for summary judgment. (Docket #20 at 2–3). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. In Defendants' motion for summary judgment, they too warned Plaintiff about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #22). He was provided with additional copies of those Rules along with Defendants' motion. *Id.* at 3–13. In connection with their motion, Defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #24). It contained short, numbered paragraphs concisely stating those facts which Defendants proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

Plaintiff did not file a document titled as a response to Defendants' statement of facts. Instead, he filed a three-page legal brief and a three-page declaration. (Docket #28, #29). Neither complies with the above-mentioned procedural rules; Plaintiff does not attempt to respond to Defendants' proposed facts with citations to evidence. Despite being twice warned of

the strictures of summary judgment procedure, Plaintiff ignored those rules by failing to properly dispute Defendants' proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Thus, the Court will, unless otherwise stated, deem Defendants' facts undisputed for purposes of deciding their motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).[1]

### 3.2 Exhaustion of Prisoner Administrative Remedies

It will be helpful to review how the PLRA's exhaustion requirement plays out in the Wisconsin prison system prior to relating the relevant facts. The PLRA establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and he must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001); *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005).

---

[1]In the end, Plaintiff's procedural foible does not matter much. The material facts are not meaningfully disputed, only their legal import. *Compare* (Docket #24), *with* (Docket #29). Relatedly, Plaintiff's responsive materials insist that he has raised a dispute of fact about exhaustion of his administrative remedies, and so the question must be left to a jury. (Docket #28 at 3). Plaintiff is incorrect. Exhaustion is a question for the Court and is never presented to a jury. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).

Several important policy goals animate the exhaustion requirement, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith*, 255 F.3d at 450–51.

Failure to exhaust administrative remedies is an affirmative defense to be proven by Defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). Exhaustion is a precondition to suit; a prisoner cannot file an action prior to exhausting his administrative remedies or in anticipation that they will soon be exhausted. *Hernandez v. Dart*, 814 F.3d 836, 841–42 (7th Cir. 2016); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A lawsuit must be dismissed even if the prisoner exhausts his administrative remedies during its pendency. *Ford*, 362 F.3d at 398.

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. There are two steps inmates must take to exhaust their administrative remedies under the ICRS. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* §§ DOC 310.07(1), 310.09(6). The ICE may reject a complaint or, before accepting it, can direct the inmate to "attempt to resolve the issue." *See id.* §§ DOC 310.08, 310.09(4), 310.11(5). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority. *Id.* § DOC 310.11(6).[2] If the complaint is not rejected, the ICE

---

[2]The ICRS defines a "reviewing authority" as "the warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(2).

issues a recommendation for disposing of the complaint, either dismissal or affirmance, to the reviewing authority. *Id.* §§ DOC 310.07(2), 310.11. The reviewing authority may accept or reject the ICE's recommendation. *Id.* § DOC 310.07(3).

Second, if the ICE recommends dismissal and the reviewing authority accepts it, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within ten days. *Id.* §§ DOC 310.07(6), 310.13. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.07(7), 310.13, 310.14. Upon receiving the Secretary's decision, or after forty-five days from the date the Secretary received the recommendation, the inmate's administrative remedies are exhausted. *Id.* §§ DOC 310.07(7), 310.14.

### 3.3 Relevant Facts

The facts are drawn from Defendants' proposed findings of fact unless otherwise noted. At all times relevant, Plaintiff has been incarcerated at Oshkosh Correctional Institution ("Oshkosh"). Plaintiff claims he suffers from bipolar disorder and type-2 diabetes, among other conditions. In 2012, he was prescribed lithium by a prison doctor, either Defendant Karl Strelnick ("Strelnick") or Defendant Patrick Murphy ("Murphy"), both of whom are doctors who cared for Plaintiff. Plaintiff says the prescribing doctor mistakenly prescribed too high a dosage, leading to lithium toxicity, acute renal failure, a coma, and an eight-day stay in a hospital intensive care unit in May 2015. Plaintiff appears to claim that these two doctors should have discovered the alleged excessive dosage before it resulted in toxicity.

Oshkosh records reveal that Plaintiff did not file any inmate complaints in 2015. His first complaint related to the facts of this lawsuit was filed on January 25, 2016. Plaintiff asserted that his lithium medication

caused his 2015 coma and he had just discovered that fact on January 23, 2016. The ICE, identified as "T. Murphy" ("Murphy") investigated the complaint by contacting the Health Services Manager ("HSM"). In consultation with the HSM and upon review of Plaintiff's medical records, Murphy dismissed the complaint. Murphy determined that Plaintiff's lithium dosage and levels were not abnormal, and it was not clear precisely what caused Plaintiff to "be so sick due to multiple medical issues going on at the same time." (Docket #25-2 at 2). Murphy felt that Plaintiff failed to present a claim of deliberate indifference under the Eighth Amendment. *Id.* Rather, he simply disagreed with his course of treatment. *Id.*

The reviewing authority, "J. Anders" ("Anders") agreed that Plaintiff's complaint should be dismissed, but "with modification." *Id.* at 4. Anders stated as follows:

> reviewed complaint and relevant medical records, dismiss with modification as appears lithium levels were measured in 10/14 and was 0.8wnl.
>
> appears that lisinopril was added to lithium between 10/14 and 5/15 without rechecking lithium levels, or reducing lithium dose.
>
> no evidence psychiatry was consulted or made aware of addition of lisinopril so psychiatry would have not had opportunity to reduce lithium dose, stop lithium, or alternatively measure li levels closely.
>
> lithium toxicity likely related to addition of lisinopril but not clear if psychiatry made aware of this addition.

*Id.*

Although this narrative is grammatically precarious, it appears Anders sought to clarify why Strelnick or Murphy accidentally prescribed too high a dosage of lithium. *Id.* Anders reports that the medical records

show that neither doctor was informed that another medication, lisinopril, was added to Plaintiff's medication regimen without rechecking lithium levels. *Id.* Thus, the physicians were unknowingly operating on lithium level measurements that were inaccurate. *Id.*

With that matter explained, Anders affirmed the ICE's recommendation of dismissal. Along with Anders' dismissal, Plaintiff was provided a notice of his right to appeal. He did not do so.

Plaintiff filed two additional complaints much later in time. The first, filed on March 8, 2017, claimed that Strelnick was deliberately indifferent to his medical needs with respect to the May 2015 hospitalization. The second, submitted on July 25, 2017, asserted that Murphy was deliberately indifferent with respect to a prescription issued on May 22, 2016. Both complaints were rejected as untimely, and that determination was upheld on appeal.

4. **ANALYSIS**

Defendants' submissions demonstrate that Plaintiff has failed to exhaust his administrative remedies. Though he began the ICRS process by filing the January 25, 2016 complaint, he failed to take it across the finish line by appealing the complaint's dismissal to the CCE and the Secretary.[3]

Plaintiff's counters that he did not need to appeal Anders' decision because he thought it was favorable to him. (Docket #28 at 3). He queries, "[why] would Plaintiff need to appeal when [Anders] acknowledge[d] that [there was] [n]o evidence [that] psychiatry was consulted." *Id.* Plaintiff cites

---

[3]The two later complaints quite clearly did not achieve exhaustion, as they were rejected for untimeliness. *Pozo*, 286 F.3d at 1025 (finding that prisoners must comply with administrative rules for exhaustion, including time limits). The only real dispute is as to the 2016 complaint.

no authority in support of this contention, and Defendants likewise fail to do so in their reply. *See* (Docket #28, #30).

The Court, left to conduct its own research, finds that Plaintiff's argument is without merit. In *Toomer v. BCDC*, 537 F. App'x 204, 206 (4th Cir. 2013), the Fourth Circuit found that appealing a decision the inmate found to be favorable was not necessary to achieve exhaustion, for there was no other or further relief that a higher-level reviewer could be expected to provide. Though Plaintiff likewise felt that there was no need to appeal, (Docket #29 at 2–3), there was indeed relief that the CCE or the Secretary could have provided Plaintiff on appeal. The dismissal of his grievance meant that Murphy found that there was no deliberate indifference to his medical needs. Anders agreed with this determination and affirmed the dismissal.

The modification Anders provided was merely additional information regarding Plaintiff's course of treatment and a potential explanation of the circumstances or errors leading to the lithium overdose. Absent from Anders' decision is a finding that these circumstances or errors constituted deliberate indifference to Plaintiff's medical need—or, more specifically, a disagreement with Murphy's conclusion to that effect. If he had appealed, Plaintiff might have persuaded the CCE or the Secretary to adopt his view of his medical care, even if they could not have awarded damages. *Booth v. Churner*, 532 U.S. 731, 731 (2001) (holding that exhaustion is required even if the process could not result in a prisoner's desired form of relief). The Court cannot forgive the failure to exhaust merely because Plaintiff misunderstood Anders' commentary as being favorable to him.

Another helpful comparator is the Seventh Circuit's decision in *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002). There, the inmate sought transfer

via a grievance. *Id.* at 487. The prison granted his request, but then never followed through with the transfer. *Id.* at 490. Although it found that the inmate had failed to exhaust for other reasons, the Seventh Circuit observed that "[r]equiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic," for it might place the inmate in a never-ending cycle of grievances. *Id.*; *see also Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (repeated unsuccessful grievances about failure to implement relief satisfied exhaustion requirement).

Plaintiff's case is not of this type. He was not granted any relief at all during review of his grievance, not even a declaration that his rights had been violated. Thus, he was in no danger of being granted some relief without the prison following through on effectuating it. Rather, he needed to appeal to convince a higher authority to grant him some relief in the first place.

Put simply, exhaustion of administrative remedies must take one of two forms. In the first, prison officials dismiss an inmate's complaint. The inmate is then required to appeal that dismissal as far as the ICRS process allows. The second form of exhaustion occurs when prison officials affirm the inmate's complaint. In doing so, the officials are *agreeing* with the inmate that he was mistreated in some way. Affirming the complaint also normally results in the inmate receiving some relief. While Anders' decision is certainly not the picture of clarity, it fits better into the first category rather than the second. Anders agreed that Plaintiff's rights were not violated and attempted to explain the reason for the unfortunate overdose incident. His words were clarification, nothing more.

5.  **CONCLUSION**

Plaintiff failed to contest the facts Defendants proffered. Viewing the undisputed facts in the light most favorable to Plaintiff, the Court is obliged to conclude that this lawsuit must be dismissed because he failed to properly exhaust his administrative remedies. This action will, therefore, be dismissed without prejudice.[4]

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #22) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

[4]Although it seems clear that Plaintiff will not be able to complete the ICRS process for his claims at this late date, dismissals for failure to exhaust are always without prejudice. *Ford*, 362 F.3d at 401.